# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TINA STUPKA, | ) | CASE NO. 1:19 CV 02305 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Tina Stupka, challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. (the Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.     Procedural History

On June 22, 2016, Plaintiff applied for DIB and SSI, alleging a disability onset date of June 30, 2010. (R. 10, Transcript (Tr.) 231-237). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr.

156-158, 162-164). Plaintiff participated in the hearing on April 10, 2018, was represented by counsel, and testified. (Tr. 35-93). A vocational expert (VE) also participated and testified. (*Id*.) On September 6, 2018, the ALJ found Plaintiff not disabled. (Tr. 13-34). On August 8, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11, 13, 14). Plaintiff asserts three assignments of error, arguing that the ALJ erred by: 1) not properly considering Plaintiff's use of a cane, 2) rendering a credibility determination that violated Social Security Ruling 16-3p and was not supported by substantial evidence, and 3) finding that Plaintiff could return to her past relevant work as a housekeeping cleaner. (R. 11).

## II.     Relevant Facts

### A.     Background

Plaintiff was born in December 1961 (Tr. 43), and has a seventh grade education. (Tr. 44). Plaintiff alleges that she is unable to work due to a fractured great toe, back pain/injury, and foot pain. (Tr. 256). Plaintiff's past work includes a composite job of production assembler (light and unskilled) and material handler (heavy and semi-skilled); and a possible composite job of housekeeper (light and unskilled) and laundry laborer (medium and unskilled). (Tr. 78-78). Plaintiff left her job as a housekeeper in 2010, after she was injured from a fall in her employer's parking lot. (Tr. 75-76).

B.      **Relevant Medical Evidence[1]**

1.      **Treatment Records**

On September 7, 2004, Plaintiff went to Dr. Robert Testa with an injury to her right great toe. (Tr. 349). She had joint replacement surgery on February 22, 2006, but the pain in her toe continued. (*Id.*). Plaintiff underwent physical therapy. (Tr. 350). As of December 5, 2006, Plaintiff still had restricted movement in her toe. (Tr. 351). Plaintiff visited an orthopedist for a second opinion, who recommended a complete fusion using a bone graft from her hip. (*Id.*) Plaintiff declined a complete fusion, and instead, in March of 2007, had surgery using a finger-joint implant. (*Id.*). On April 22, 2010, Plaintiff had the implant removed because she was still in pain. (Tr. 352).

In January of 2010, Plaintiff was working as a housekeeper at Red Roof Inn. (Tr. 75-76). On January 18, 2010, she fell on ice while at work and injured her head, neck, left elbow, and the left side of her back. (Tr. 328-332). Plaintiff went to the Parma Hospital Emergency Department, and the examining physician determined that she had a rib contusion on her left side. (Tr. 333). The examining physician administered a dose of Dilaudid and Toradol. (Tr. 334). Plaintiff was discharged the same day with short-term prescriptions for Vicodin, Valium, and Motrin and a recommendation to see her primary care physician. (Tr. 334-35).

After her fall, Plaintiff treated with Southwest Orthopedics for a thoracic strain and contusion. (Tr. 399). She continued to work as a housekeeper until August 2, 2010, when her physician, Mary Anthony, D.O., recommended that she stop. (Tr. 399). On October 20, 2010,

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

Plaintiff underwent an MRI which demonstrated mild degenerative changes at T1-T2 and T2-T3 with a left paramedian disc bulge at T2-T3. (Tr. 377). Dr. Stephen Bernie noted, on November 1, 2010, that the MRI findings were consistent with Plaintiff's subjective reports of pain in the left thoracic and subscapular region, the examination findings and the mechanism of injury. (Tr. 377).

On November 9, 2010, Plaintiff began treatment with John Fortuna, D.C. (Tr. 372). Plaintiff underwent twelve months of chiropractic manipulation. (Tr. 367-374). She also continued under the care of her treating pain management specialist, James B. Yokiel, M.D. (Tr. 666). Plaintiff was referred for physical therapy; prescribed narcotic and non-narcotic pain medicines; and had a thoracic nerve root injection in March 2013 and in December 2013. (*See, e.g.*, Tr. 381, 666, 671, 971).

On January 18, 2011, Dr. Fortuna concluded that Plaintiff had a cervical sprain which he opined resulted from her January 2010 fall.   (Tr. 617). On May 16, 2011, an MRI revealed a disc herniation at C5/6. (Tr. 725). On July 30, 2012, Dr. Fortuna concluded that Plaintiff injured her lumbar spine during physical therapy. (Tr. 795). An MRI of the lumbar spine dated August 7, 2014, revealed a bulging disc at L3/4 and L4/5. (Tr. 883-884).

Plaintiff was referred to Dr. James Medling, Ph.D. to assess the impact of her injury on her psychological functioning. (Tr. 361). On June 19, 2012, Dr. Medling conducted a psychological evaluation and found that Plaintiff's affect was blunted, and her mood was depressed. (Tr. 364). He diagnosed her with major depression recurrent moderate and believed that the depression was directly related to her January 2010 work injury. (Tr. 365).

On February 26, 2013, Dr. Thomas Evans examined Plaintiff and completed an independent medical examination, at the request of the Ohio Bureau of Worker's Compensation.

4

(Tr. 867-871). Dr. Evans opined that Plaintiff had major depressive disorder. (Tr. 870). He believed that the depression was a direct and proximate result of her industrial injury. (*Id.*)

On February 28 and March 5, 2013, Dr. Robert Byrnes, Ph.D. conducted a consultative psychological examination of Plaintiff. (Tr. 685-691). Dr. Byrnes opined that Plaintiff met the criteria for recurrent major depressive disorder, but he could not conclude that her depression was a direct and proximate result of the January 2010 incident. (Tr. 691).

In February of 2015, Plaintiff's husband passed away. (Tr. 990). As a result, Plaintiff had to perform more activities of daily living around the house, resulting in the onset of low back pain. (Tr. 990). Plaintiff continued treating her depression and anxiety at MetroHealth and through counseling at Horizon's Counseling Services, Inc. (Tr. 892-94, 933, 962-968).

On July 12, 2016, Plaintiff reported that her back pain radiated down her right lower extremity to her foot. (Tr. 982). Dr. Yokiel observed that Plaintiff exhibited increased pain symptoms with straight leg raising at 40 degrees but did not note any significant sensory or motor deficits. (Tr. 982).

Based on treatment notes from Dr. Hedaya since December 2017 and her pain management specialist Samuel Rosenberg, M.D., since February 2018, Plaintiff reported a worsening of her chronic pain, but the treatment recommendations remained conservative and generally consistent with the treatment modalities that Dr. Yokiel prescribed and recommended over the course of the adjudicated period (Tr. 1137-43, 1237-42; *see also* Tr. 1173-77, 1180, 1183, 1199).

### 2.    Medical Opinions Concerning Plaintiff's Functional Limitations

On August 12, 2016, Dr. Leon Hughes reviewed Plaintiff's administrative file. (Tr. 126-137). Dr. Hughes opined that Plaintiff could perform light work. (Tr. 136). He concluded that

Plaintiff could occasionally lift and/or carry 20 pounds, could frequently lift and/or carry 10 pounds, could stand and/or walk for a total of about six hours in an eight-hour workday, could push and/or pull with no restrictions other than for lift and/or carry, could occasionally climb ramps/stairs/ladders/ropes/scaffolds, could frequently balance, and could occasionally stoop/kneel/crouch/crawl. (Tr. 132). Dr. Hughes opined that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her pain and social interaction limitations were not substantiated by the objective medical evidence alone. (Tr. 131). The doctor explained that Plaintiff's statements regarding her pain and social interaction limitations were partially consistent with the total medical and non-medical evidence in her file. (Tr. 131). Specifically, Dr. Hughes noted that

> [t]he severity of [Plaintiff's] statements are not fully supported by MER in file. Specifically, [Plaintiff] states difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory and completing tasks. Evidence shows [Plaintiff] has normal heart function, normal gait and full use of all extremities, can care for animals, can care for hygiene, can make simple meals, can perform HH chores, can drive, and can go shopping. Statements are partially consistent.

(Tr. 131).

Regarding Plaintiff's mental residual functional capacity assessment, Dr. Hughes opined that Plaintiff had understanding and memory limitations. (Tr. 132). Dr. Hughes noted that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, but her ability to remember locations and work-like procedures and to understand and remember very short and simple instructions were not significantly limited. (Tr. 132).

Dr. Hughes opined that Plaintiff had sustained concentration and persistence limitations. (Tr. 132). Specifically, he noted that Plaintiff had moderate limitations in the following areas:

ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and the ability to work in coordination or in proximity to others without being distracted by them. She was not significantly limited in the following areas: the ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to make simple work-related decisions; and the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 132-22).

Dr. Hughes opined that Plaintiff had social interaction limitations. Plaintiff was moderately limited in the ability to: interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 134). Plaintiff was not significantly limited in the ability to ask simple questions or request assistance, or in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 134).

Dr. Hughes explained that Plaintiff had adaptation limitations. Dr. Hughes opined that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting (Tr. 134). Plaintiff was not significantly limited in the ability: to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others.

Dr. Marjorie Kukor, Ph.D., conducted a mental residual functional capacity assessment on

7

August 22, 2016. (Tr. 133-135). The doctor opined that Plaintiff would have moderate limitations in the following areas: ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to work in coordination or in proximity to others without being distracted by them, ability to interact appropriately with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and ability to respond appropriately to changes in the work setting. (*Id.*)

Dr. James Cacchillo reviewed Plaintiff's file upon reconsideration on January 27, 2017. (Tr. 139-151). The doctor opined that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her symptoms were partially consistent with total medical and non-medical evidence in the file. (Tr. 147). He restated that Plaintiff could perform light work. (Tr. 152). Dr. Cacchillo's listed the same physical and psychological restrictions as Dr. Hughes. (Tr. 147-151).

### C.    Relevant Hearing Testimony

Plaintiff obtained her driver's license when she was eighteen years old. (Tr. 45). She drove herself to doctor's appointments a couple of times a month. (*Id.*). Plaintiff testified that her sciatic nerve made it hard to push the pedals, and she had trouble driving. (*Id.*).

Plaintiff's last job was on the assembly line at Vitamix making blenders. (Tr. 45-46). She testified that she had to lift one twenty-pound blender at a time. (Tr. 48). Plaintiff was assigned a different task each day on the assembly line. (*Id.*). The most she had to pull was one hundred pounds on a pallet. (Tr. 49).

8

Plaintiff also worked at Red Roof Inn as a housekeeper cleaner. (Tr. 49). She testified that she had to lift twenty to twenty-five pounds (Tr. 51), and the carts weighed around seventy-five pounds. (Tr. 70). Plaintiff testified that, although it was not a normal part of her job duties as a housekeeping cleaner, she performed the laundry service a couple times a week, when the normal laundry person was not at work. (Tr. 51, 57).

In 2010, Plaintiff fell on ice while at work. (Tr. 75). She went to the emergency room and was told that she had a rib contusion. (Tr. 75). She continued to work for another year. (Tr. 75). Plaintiff's doctor indicated that her back would not heal because of the work she was performing, and Plaintiff testified she stopped working because of her back issues. (Tr. 52).

Plaintiff explained that her biggest problem was her low back and right foot. (Tr. 52).  She testified that after she broke her great toe, they removed the joint and it hurt all the time. (Tr. 53). She had four surgeries on her right foot. (Tr. 58). Her low back hurt most when she was walking or bending over. (Tr. 53, 74).

In addition, Plaintiff testified that her neck hurt, and she could not turn her head about once a month. (Tr. 65). She was using a cane and had used it for about a year because she kept falling (Tr. 53). She fell and had a concussion, so her doctor gave her a cane (Tr. 54). Plaintiff testified that the cane was prescribed by a physician, and she used the cane everywhere. (Tr. 66).

Plaintiff stated that she could stand for twenty-five to thirty minutes before her low back and foot hurt "really bad." (Tr. 54). She could walk for about half an hour. (*Id*.). Plaintiff testified that she had difficulty and pain lifting a bag of groceries and while lifting a gallon of milk out of the refrigerator and pouring it. (*Id*., 67). She can do it, but noted it is heavy. (Tr. 67).

Plaintiff lived with her daughter, who moved in after Plaintiff's husband passed away. (Tr.

55). Her daughter helped take care of the cats, clean the house, do the grocery shopping and cook.
(*Id*.).

According to Plaintiff's testimony, she experienced days when her depression was so
severe that she did nothing but stay in her room. (Tr. 56). She took medication for her depression
and anxiety. (Tr. 67). Plaintiff testified that she gets along with most people, but now that she is
in more pain, she prefers to keep to herself. (Tr. 82). She has outbursts of anger towards other
people. (Tr. 82).

Plaintiff testified that her left toes and the ball of her foot hurt. (Tr. 61).  She stated that  the
pain in the ball of her foot was a nine on a scale of one to ten. (*Id*.). Her back pain was a seven to
eight, but it was a ten by the end of a day. (Tr. 62).  Plaintiff testified that pain blocks and pain
medication did not relieve her pain. (Tr. 63-64).

The VE testified that Plaintiff's past work was a composite job of production assembler
(light and unskilled) and material handler (heavy and semi-skilled); and a possible composite job
of housekeeper (light and unskilled) and laundry laborer (medium and unskilled). (Tr. 77-78).
According to the VE, Plaintiff's description of her work at Red Roof Inn included "significant
elements of two or more occupations" although the VE noted it would be unusual for housekeepers
also to perform laundry services as it is not typically an essential function of a housekeeper's
duties. (Tr. 78, 84-85).

During the administrative hearing, the ALJ asked the VE the following hypothetical
question:

> [I]magine a hypothetical individual with Ms. Stupka's vocational profile, limited to
> the performance of light work, as defined under the regulations, except she can
> never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs,

stoop, kneel, crouch, and crawl…. She can frequently balance. This individual is further limited to simple, routine tasks, with no strict time demands, no strict production quotas, no more than simple work-related instructions and decisions. Oh, and no more than occasional changes in the work setting…. Finally…let's limit to occasional interaction with supervisors, and occasional and superficial interaction with co-workers and the public.

(Tr. 81-83). The VE stated that such a hypothetical individual could perform the job of a housekeeper as well as jobs of gluer, inspector and hand packager, and electronics worker. (Tr. 84). In addition, if limited to sedentary level of exertion, Plaintiff could not perform her past work. (Tr. 84). The VE further testified that a person in an unskilled occupation could be off task fifteen percent each hour and absenteeism of two of more days would be work preclusive. (Tr. 85).

### III.    Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.     Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50.   The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3. The prescribed period ends on November 30, 2021.

4. The claimant has not engaged in substantial gainful activity since July 15, 2010, the alleged onset date (20 CFR 404.1571 et seq.).

5. The claimant has the following severe impairments: cervical spondylosis, thoracolumbar degenerative disc disease with radiculopathy, status post right great toe fracture and fusion, depressive disorder, and anxiety (20 CFR 404.1520(c)).

6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps or stairs, stoop, kneel, crouch and crawl; and she can frequently balance. The claimant is further limited to simple, routine tasks with no strict time demands, no strict production quotas, no more than simple work-related instructions and decisions, and no more than occasional changes in the work setting; and she is limited to occasional interaction with supervisors, and occasional and superficial interaction with coworkers and the public.

8. The claimant is capable of performing past relevant work as a housekeeping cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

9. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2010 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 19-30).

## V.    Law and Analysis

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

13

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

### 1.    Plaintiff's Use of a Cane

In the first assignment of error, Plaintiff contends that the ALJ failed to properly consider her use of a cane. (R. 11, PageID# 1312). Plaintiff argues that she is unable to perform her past relevant work due to her use of a cane, and contends the ALJ erred by excluding the use of a cane from his Residual Functional Capacity (RFC) determination.[2] (R. 11, PageID# 1313).

When considering a claimant's argument pertaining to the use of a cane, the analysis is guided by Social Security Ruling (SSR) 96-9p, which provides:

> **Medically required hand-held assistive device**: *To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, **and** describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9, 1996 WL 374185 (Jul. 2, 1996) (emphasis added).

---

[2] The RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 404.1545(a).

Plaintiff's argument centers on her testimony that she "needed a cane even inside the house." (R. 11, PageID#1312, citing Tr. 54). She cites to treatment records documenting her pain and diminishing strength, for the assertion that "[t]hese findings document Stupka's deteriorating condition which resulted in her need for a cane." (R. 11, PageId# 1312, citing Tr. 1173, 1138, 980, 21). Plaintiff points the court to transcript pages 21, 980, 1173, and 1138 as evidence documenting her need for cane in compliance with the criteria set forth in SSR 96-9, but the record citations and argument are not persuasive.

In particular, Plaintiff cites to page 1173 for the proposition that she "had a history of neck and back and right leg pain" and that "[s]he had fallen twice and ambulated with a cane assist." (R. 11, PageID# 1312). Transcript page 1173 is a medical record from Plaintiff's February 1, 2018 visit to Dr. Samuel Rosenberg to establish a new relationship. (Tr. 1173). The record reflects Plaintiff's self-reported history provided to Dr. Rosenberg, notably, that she "[h]as fallen twice due to right leg 'giving out', gait unsteady, ambulates with cane assist." (Tr. 1173). Plaintiff also relies upon transcript page 1138 for the proposition that "[p]rior treatment records document pain radiating to the legs with weak limbs, numbness of the legs/feet, and tingling[.]" (R. 11, PageID# 1312). That record, however, reflects Plaintiff's subjective assessment provided to Dr. Hedaya on December 15, 2017, indicating pain radiating to her legs, weak limbs; numbness of her legs/feet, and tingling. (Tr. 1138). Further, in his review of Plaintiff's symptoms, Dr. Hedaya noted that Plaintiff "reports back pain, but reports no muscle aches, no muscle weakness…no difficulty walking…no exercise intolerance….no shortness of breath when walking…no loss of consciousness, no weakness, no numbness, no seizures, no dizziness…no gait dysfunction, and no paralysis." (Tr. 1138). Moreover, Dr. Hedaya noted that Plaintiff was "ambulating normally." (Tr. 1139). Dr. Hedaya further documented "normal tone and motor strength, joints, bones and

15

muscles" and "normal movement of all extremities." (Tr. 1139).

In addition, Plaintiff cites to transcript page 980 for the proposition that she had diminished strength in the right hamstring and quadricep. (R. 11, PageID# 1312). That record is a progress note from Dr. Yokiel, who noted that Plaintiff had "[d]iminished strength against resistance in the right hamstring and quadricep." (Tr. 980). Dr. Yokiel also noted that Plaintiff reported that "[s]he is doing some stretching, housework, lifting, and walking at home." (Tr. 980).

In her reply brief, Plaintiff further relies upon transcript pages 725, 1180, 883-884, and 1143 for the proposition that Plaintiff's MRI tests showed bulging discs/disc herniations, disc degeneration, grade 1 degenerative spondylolisthesis, and an annular tear. (R. 14, PageID# 1337). These record citations refer to the interpretive results of Plaintiff's MRIs from May 16, 2011, (Tr. 725), and December 28, 2017, (Tr. 1143). Plaintiff's citations, however, do not identify medical documentation demonstrating the requirement for a cane. Rather, Plaintiff cites to her documented medical conditions and asks the court to *infer* from these records that the use of a cane is medically necessary. Only one of Plaintiff's many record citations mentions a cane (Tr. 1173), and even that reference reflects Plaintiff's subjective use of the cane rather than "medical documentation establishing the need for a hand-held assistive device…and describing the circumstances for which it is needed…." *See* SSR 96-9p. Moreover, Plaintiff's briefing and hearing testimony indicate that a cane "had been prescribed" but they fail to support the assertions with any records documenting that a provider prescribed a cane or other assistive device or provided a medical opinion indicating that the cane was necessary. *See, e.g.*, R. 11, PageID# 1309, 1316; R 14, PageID# 1337; Tr. 54, 66.

Thus, the only evidence regarding Plaintiff's use of a cane is her own testimony. (Tr. 54).

Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, finding it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device. *See, e.g., Blackburn v. Colvin, No.* 1:15cv1398, 2016 WL 4821766 at *5 (N.D. Ohio Sept. 15, 2016) (noting that Plaintiff's use of crutches and a wheelchair to ambulate were not supported by medical documentation, as required by Social Security Ruling 96-9p) (Pearson, J.); *Mitchell v. Comm'r of Soc. Sec.*, No. 4:13cv1969, 2014 WL 3738270 (N.D. Ohio Jul. 29, 2014) (finding that Plaintiff's testimony did not qualify as "medical documentation establishing the need" for the cane under SSR 96-9p) (Pearson, J.); *Smith v. Astrue*, No. 2:11-0065, 2012 WL 4329007 at *8 (M.D. Tenn. July 16, 2012), *report and recommendation adopted*, 2012 WL 4328993 (M.D. Tenn. Sept. 20, 2012) ("Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only evidence supporting a cane requirement comes from Plaintiff's testimony.").

Plaintiff fails to draw the court's attention to any medical documentation indicating that she was prescribed a cane. Plaintiff's hearing testimony does not qualify as medical documentation. While there is some indication in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Plaintiff does not cite to any medical records describing the circumstances for which a cane is needed, as required by SSR 96-9p. *See, e.g., Paul v. Comm'r of Soc. Sec.*, No. 2:13cv14911, 2015 WL 1299980 at *1 (E.D. Mich. Mar. 23, 2015) ("[P]laintiff cannot simply make bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."); *Nash v. Comm'r of Soc. Sec.*, No. 1:12 CV 2234, 2013 WL 4736736, at *3 (N.D. Ohio Sept. 3, 2013) ("it is not this Court's function to scour the administrative record and craft arguments on Plaintiff's behalf.").

Plaintiff fails to cite any medical documentation demonstrating that her use of a cane was

medically required and has failed to show that the ALJ erred when rendering the RFC determination. For the above reasons, the court recommends that the first assignment of error be rejected.

## 2.    The ALJ's Credibility Determinations

In the second assignment of error, Plaintiff contends that the ALJ did not comply with SSR 16-3p, 2016 SSR LEXIS 4, in evaluating her subjective symptoms.

Plaintiff points to her testimony regarding her low back and right foot pain, that she used a cane for the past year, that the cane had been prescribed, and that there were days she was unable to leave her room due to depression. (R. 11, PageID# 1315-16). Plaintiff contends that the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Plaintiff's testimony was credible. (R. 11, PageID# 1315).

In making a disability determination, the ALJ considers all the claimant's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The ALJ] will consider all of [the claimant's] statements about [the claimant's] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to work." 20 C.F.R. §404.1529(a).

"In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability")).

However, a claimant's statements as to "pain or other symptoms will not alone establish that [she is] disabled...." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). An ALJ conducts a two-part analysis to evaluate a claimant's subjective statements of pain when the symptoms rather than that underlying condition form the basis of the disability claim. *Rogers*, 486 F.3d at 247; *see also* SSR 16-3P, 2016 SSR LEXIS 4 at *5, 2017 WL 5180304, at *3-*4. First, the ALJ must determine whether there is "an underlying medically determinable physical impairment [MDI] that could reasonably be expected to produce the claimant's symptoms." *Id.* (citing 20 C.F.R. § 416.929(a)).

If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's alleged symptoms "based on a consideration of the entire case record." *Id.*

Social Security Regulation 16-3P lists the factors relevant to the ALJ's determination at the second step. These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain; and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3P, 2016 SSR LEXIS 4 at *19, 2017 WL 5180304, at *7-*8; *see, e.g.*, *Morrison v. Commissioner*, No. 16-1360, 2017 U.S. App. LEXIS 19463, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017).

While an ALJ is not required to explicitly address all these factors, the ALJ should

sufficiently articulate specific reasons for the credibility determinations so that the claimant and any subsequent reviewer can "trace the path of the ALJ's reasoning." *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

The ALJ summarized the claimant's allegations as follows: 'The claimant has alleged the combined effects of her work-related injuries and her mental impairments have prevented her from engaging in substantial gainful activity on a regular and continuing basis since January 18, 2010." (Tr. 25). In conducting the above analysis, at step one, the ALJ stated;

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.*).

Regarding step two, Plaintiff asserts that the ALJ failed to apply proper legal standards and contends the ALJ erred by discounting Plaintiff's subjective complaints despite objective medical evidence supporting her contentions regarding the severity of the symptoms. (R. 11, PageID# 1314-17; R. 14, PageID# 1338). According to Plaintiff, the ALJ committed harmful error. Despite asserting that the ALJ failed to apply the proper legal standards, Plaintiff does not argue that the ALJ failed to consider any of the factors set forth in SSR 16-3p, or that the ALJ failed to explain the credibility determinations. Rather than challenge the process the ALJ followed when making the credibility determinations, Plaintiff takes issue with the conclusion of those determinations.

For example, Plaintiff contends that the ALJ discounted her testimony that there were days when she could not get out of bed due to depression. (R. 11, PageID#1316). Plaintiff points to the

ALJ's finding that "'the totality of the medical evidence establishes that the claimant's acute exacerbations of her long-standing history of depression and anxiety have responded amelioratively to routine mental health treatment modalities' (Tr. 27)." (R. 11, PageID# 1316). Plaintiff further cites to portions of the ALJ's decision wherein he explains his determinations regarding Plaintiff's various treating physicians and consulting physicians. Thus, Plaintiff is not making an argument that the ALJ failed to follow the procedure set forth in SSR 16-3p, but rather disagreeing with the ALJ's credibility determinations.

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 U.S. Dist. LEXIS 121965, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). Although the ALJ's credibility determinations must be "based on a consideration of the entire case record[,]" *Rogers*, 486 F.3d at 247-248, , the ALJ's decision need not explicitly discuss each of the factors. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). "While the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph." *Newsome v. Comm'r of Soc. Sec.,* No. 1:18-cv-2707, 2019 U.S. Dist. LEXIS 223785, at *29 (N.D. Ohio Dec. 5, 2019).

Here, the ALJ concluded that claimant's statements concerning the effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in this decision." (Tr. 25). The ALJ's decision considered pertinent factors in SSR 16-3P, including Plaintiff's daily activities, intensity of her symptoms, prescribed medications and treatments other than medications. *Id.* at 25-27; *see also* SSR 16-3P, 2016 SSR

LEXIS 4 at *19, 2017 WL 5180304, at *7-*8.

For example, Plaintiff argues that she "testified at the hearing that her most limiting problem was her low back and right foot[]" and that "[t]his was supported by a finding that the MRI was consistent with her subjective reports of pain etc." (R. 11, PageID # 1316, citing Tr. 52, 377). The ALJ's decision considered this testimony along with the documented medical evidence, noting Plaintiff claimed that, from her alleged onset date, she "stopped working outside the home, and instead, stayed home, 'mostly resting,' watching television, washing the dishing, making the bed, and feeding her cat, while her third husband worked full-time." (Tr. 20). The ALJ further explained that "[a]fter her third husband's sudden passing on February 18, 2015, the claimant told Dr. Yokiel that she had to perform more activities of daily living around the house, resulting in the onset of low back pain." (Tr. 21). The ALJ confirmed that "[a]ccording to an MRI of the claimant's lumbar spine, Dr. Yokiel noted that the claimant had bulging at her L3-L4 and L4-5 disc spaces (Ex. 11F, pp. 7-8). The claimant has reported that her back pain radiated down her right lower extremity to her foot. (Ex. 11F, p. 14)." (Tr. 21). The ALJ acknowledged that Dr. Yokiel diagnosed Plaintiff "with lumbar disc displacement and lumbar radiculopathy, but he opined that only conservative treatment was necessary." (Tr. 21).

In considering Plaintiff's subjective testimony, the ALJ noted that "[i]n fact, despite her need to do 'more things around the house,' the claimant has reported that her increased acute low back pain responded amelioratively to a TENS unit and a lumbar support brace." (*Id.*). The ALJ acknowledged that Plaintiff reported a "recent worsening onset of her chronic pain" to Dr. Hedaya and Dr. Rosenberg, "but the treatment recommendations have remained conservative and generally in line with the treatment modalities that Dr. Yokiel prescribed and recommended over the course of the current adjudicating period." (*Id.*).

With regard to her toe pain, the ALJ acknowledged Plaintiff's surgical history and concluded that "[b]ased on treatment notes from her treating podiatrist Robert G, Testa, DPM, the claimant's right toe fracture responded very well to a final joint implant on March 15, 2007, regaining excellent range of motion dorsally with only slight restriction plantarly (Ex. 2F, p 6)." (Tr. 21). In addition, ALJ noted that despite toe surgeries and "degenerative lumbar spine disorder with radiculopathy, the claimant has not experienced pseudoclaudication in her lower extremities that has prevented her from ambulating independently on a sustained basis[.]…In fact, the claimant testified that she has continued to drive, but she has experienced some restrictive pedal issues with the right lower extremity when she experienced an acute exacerbation of her radiculopathy, but the evidence fails to establish a functional inability to use her lower extremities on a sustained basis." (Tr. 21).

As noted above, Plaintiff contends that the ALJ erred by not crediting her testimony regarding depression. (R. 11, PageID# 1316). According to Plaintiff, the ALJ's conclusion that "the totality of the medical evidence establishes that the claimant's acute exacerbations of her long-standing history of depression and anxiety have responded amelioratively to routine mental health treatment modalities" discounts her testimony that there were days when she could not get out of bed due to depression. (R. 11, PageID# 1316, quoting Tr. 27).[3] Plaintiff continues that such a conclusion is contrary to her psychological records. She points to Dr. Medling's evaluation wherein he diagnosed Plaintiff with major depression recurrent moderate, and observed she had a

---

[3] The ALJ further explained that Plaintiff's history of depression and anxiety have "responded amelioratively to routine mental health treatment modalities (i.e. medication and counseling services) without the need for inpatient hospitalizations, intensive outpatient services, or the medical need for a highly-dependent living arrangement to manage her essential and nonessential activities of daily living during the current adjudicating period." (Tr. 27).

depressed mood and blunted affect. She also points to Dr. Evens' February 2013 evaluation wherein he opined that Plaintiff had major depressive disorder; and cites to Dr .Byrnes' diagnoses of major depressive disorder, as well as the fact that she attended counseling at Horizon's Counseling and MetroHealth. (R. 11, PageID #1316). None of these records, however, establish that the ALJ erred by not finding a disabling mental limitation.

Moreover, it is clear that the ALJ considered the above reports in consideration of Plaintiff's subjective testimony. For example, the ALJ gave Dr. Medling's opinion "limited weight to the extent that his assessment that the claimant had a depressive disorder remains generally consistent with the totality of the medical evidence." (Tr. 27). In addition to recognizing Dr. Medling's opinion that Plaintiff's depression "rendered her 'temporarily and totally disabled' from gainful employment," the ALJ explained that the opinion was based upon another agency's rules and regulations (Bureau of Workers' Compensation) and therefore not binding or applicable to the medical-vocational rules and regulations of the Act. (Tr. 27).

The ALJ further noted that despite Plaintiff's daughter's statement that Plaintiff self-isolated and did not engage in social functions, "treatment notes from Dr. Finton establishes that this isolative tendency was not long-lasting because, on June 30, 2015, the claimant reported that she had successfully complete[d] grief counseling after her husband's death, as a result she was not depressed and she was 'busy and on the go.'" (Tr. 23). Further relying upon her treatment records, the ALJ noted that Plaintiff "reported that she ate out a lot, suggesting that she was not spending all of her time at home." (Tr. 23).

The underlying decision acknowledged that in February of 2016, Plaintiff sought counseling services with Horizon Counseling and that according to treatment records, "her anxiety and depressive symptoms have responded amelioratively to a combination of

24

psychotropic medication (currently Wellbutrin) and counseling services without the need for inpatient hospitalizations or more intense outpatient services." (Tr. 23). The ALJ considered that Plaintiff sought further mental health treatment in February of 2018, at MetroHealth. (Tr. 23). As the ALJ explained, however, "[t]his recent intake assessment fails to establish any documented worsening of her mental condition that would suggest more restrictive limitations in social functioning than longitudinally documented during the current adjudicating period." (Tr. 23). The ALJ concluded that Plaintiff's "ability to seek treatment voluntarily further establishes her ability to manage her self-care independently in a non-disabling manner." (Tr. 24).

Reading the decision as a whole, it is clear that the ALJ considered the SSR 16-3P factors in assessing the credibility of Plaintiff's statements concerning the effects of her symptoms. Further, the ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence. "Because 'a reasonable mind might accept [the evidence] as adequate to support' his credibility determination, the court concludes that substantial evidence supports the ALJ's finding." *Norris v. Commissioner*, 461 Fed. Appx. 433, 2012 WL 372986, at *5 (6th Cir. 2012) (citing *Rogers*, 486 F.3d at 241).

For the above reasons, the court recommends that the second assignment of error be rejected.

### 3.    Plaintiff's Past Relevant Work as a Housekeeping Cleaner

Plaintiff contends that the ALJ improperly found that she could return to her past relevant work as a housekeeping cleaner. (R. 11, PageID# 1317). Plaintiff's argument is based upon the VE's testimony that Plaintiff's employment at Red Roof Inn was a possible composite job of

housekeeper and laundry laborer. (Tr. 78). The VE's pertinent testimony states:

> I'm not sure if that's a composite…But I'll give you the housekeeper. It's DOT number 323.687.014. It was a light level of exertion. It was unskilled. The SVP is 2. As she performed that job, by itself, it was at the light level. And then she was assigned, or would need to go to the laundry, where that would be a laundry laborer. It's number 361.687-018. That's a medium level of exertion. It's unskilled. The SVP is 2. As she described performing it, it was at the medium level."

(Tr. 78). Plaintiff argues that she "could only return to her past work if she could perform both parts of the job." It follows, according to Plaintiff, that "Since the laundry laborer part of the job was both classified and performed at the medium level of exertion, it was error to find that she could still perform that job." (R. 11, PageID# 1318).

To support her argument, Plaintiff relies upon Social Security Ruling 82-61, which addresses the evaluation of past relevant work. Plaintiff's argument, however, contradicts the relevant portion of SSR 82-61, which states:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'

SSR 82-61, 1982 SSR LEXIS 31. Further, SSR 82-62 states that "The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'" SSR 82-62, 1982 SSR LEXIS 27.

Plaintiff testified that in her position at Red Roof Inn, at least two times a week, she was required to do laundry in addition to her housekeeping duties. (Tr. 58). Therefore, at issue is whether doing laundry is a duty "significantly in excess of those generally required" for

housecleaners throughout the national economy. SSR 82-61, 1982 SSR LEXIS 31. To that end, the VE explained that "typically, laundry's not an essential function of a housekeeper" (Tr. 78), and that "I've actually placed housekeepers, and it's unusual that they would do the laundry" (Tr. 85). The VE noted that Plaintiff could not perform this past work if she was limited to the sedentary work. (Tr. 84). But the VE testified that a hypothetical individual with Plaintiff's vocational profile, limited to the performance of light work, could perform Plaintiff's past work as a housekeeper. (Tr. 83-4).

Plaintiff argues that because she required a cane, she is precluded from engaging in work at the light level of exertion; and therefore, the ALJ erred when he found that she could return to her past work. (R. 11, PageID# 1319). The court addressed Plaintiff's argument regarding the use of a cane above, and found it lacks merit. Consequently, the court's conclusion regarding Plaintiff's first assignment of error is also determinative of her argument here. Plaintiff, therefore, has not shown that the ALJ erred in determining that Plaintiff could perform her past relevant work as a housekeeping cleaner.

For the above reasons, the court recommends that the third assignment of error be rejected.

## VI.  Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: December 29, 2020

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).